UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

KARL BASTIEN,                                                    **DECISION**
                                                                              **and**
                                              Petitioner,         **ORDER**

                        v.                                          **03-CV-611F**
                                                                    **(consent)**

DEPARTMENT OF HOMELAND SECURITY,
 (BICE),

                                              Respondent.

_____

APPEARANCES:            KARL BASTIEN, *Pro Se*
                                    Buffalo Federal Detention Facility
                                    4250 Federal Drive
                                    Batavia, New York 14020

                                    MICHAEL A. BATTLE
                                    United States Attorney
                                    Attorney for Respondent
                                    MONICA J. RICHARDS
                                    Assistant United States Attorney, of Counsel
                                    Federal Centre
                                    138 Delaware Avenue
                                    Buffalo, New York 14202


## JURISDICTION

On August 12, 2003, Petitioner commenced this action seeking habeas relief

pursuant to 28 U.S.C. § 2241.  The parties to this action consented to proceed before

the undersigned on November 20, 2003.


## BACKGROUND

Petitioner filed his petition seeking habeas relief pursuant to 28 U.S.C. § 2241 on

August 12, 2003.  On November 11, 2003, Respondent filed an "Answer, Return and

Memorandum of Law " (Doc. No. 6) ("Respondent's Memorandum"), opposing the

Petition.  On December 1, 2003, Petitioner filed "Petitioner's Memorandum of Law in

Opposition to Respondent's Answer, Return and Memorandum of Law" (Doc. No. 8)

("Petitioner's Response"), and a Traverse (Doc. No. 9) ("Petitioner's Traverse").  On

December 11, 2003, Respondent filed a Reply Memorandum of Law (Doc. No. 10)

("Respondent's Reply").  Oral argument was deemed unnecessary.

      Based on the following, the Petition is DISMISSED.


## FACTS[1]

      Petitioner Karl Bastien ("Petitioner"), a native and citizen of Haiti, was born on

December 24, 1972, and was admitted to the United States as a lawful permanent

resident ("LPR") on May 25, 1988.  AR 66, 310, 492.[2]  On March 29, 2002, Petitioner

was convicted by plea in New York Supreme Court, New York County, of Grand

Larceny in the Fourth Degree in violation of New York Penal Law § 155.30 (McKinney

1998) ("the grand larceny conviction"), a class E felony.  AR 66, 484, 657.  The

conviction was obtained pursuant to a New York grand jury indictment returned on

October 11, 1994, AR 485-86, and  Petitioner was sentenced on March 29, 2002 to a

term of incarceration of 1½ to 3 years.  AR 66, 484, 657.  On October 18, 2000, the

---

[1] Taken from the pleadings and Certified Administrative Record filed in this action.

[2] References to "AR" are to the pages of the Certified Administrative Record pertaining to
Petitioner's administrative removal proceedings, a copy of which is attached as Exhibit A to Respondent's
Answer and Return (Doc. No. 6).

Immigration and Naturalization Service ("the INS")[3] issued a Notice to Appear ("the

Notice to Appear") charging that Petitioner was removable pursuant to Immigration and

Nationality Act ("INA") § 237(a)(2)(A)(iii), because Petitioner's 2002 grand larceny

conviction rendered him an aggravated felon.[4]  AR 656-58.  Petitioner was served with

the Notice to Appear on November 14, 2002.  AR 658.

On November 21, 2002, Petitioner, appearing *pro se* at the administrative

removal proceedings before the Immigration Judge ("IJ") to answer the removal

charges, admitted to the factual allegations contained in the Notice to Appear.  AR 60-

72.  Because Petitioner refused to designate a country of removal in the event he was

found removable, AR 67-68, the IJ designated Haiti as the removal country, and

inquired whether Petitioner has any reason to believe that he would be harmed upon

being removed to Haiti.  AR 68.  Because Petitioner expressed fear he possibly would

be harmed if he returned to Haiti, the IJ provided Petitioner with an asylum petition and

adjourned the proceedings.  AR 68-69, 72.

---

[3] The INS was abolished and the entire United States' immigration system was restructured with the enactment of the Homeland Security Act of 2002, which became effective as of March 1, 2003, (Pub.L. 107-296, Nov. 25, 2002, 116 Stat. 2135) ("Homeland Security Act"), 6 U.S.C. § 291 *et seq.*  The Homeland Security Act created the Department of Homeland Security ("the DHS") and the Bureau of Immigration and Customs Enforcement ("the BICE").  The BICE is responsible for certain functions previously handled by the INS, including enforcement functions relating to the detention and removal of aliens from the United States.

[4] The record does not explain how the Notice to Appear, which the INS issued on October 18, 200<u>0</u>, could charge Petitioner with removability based on his March 29, 200<u>2</u> felony grand larceny conviction.  Petitioner, however, does not challenge the validity of the Notice to Appear.  The record indicates that Petitioner failed to appear to defend the state felony charge because Petitioner had traveled to Haiti to assist his mother in searching for his brother who allegedly had been kidnapped in Haiti and remained missing, but that after returning to the United States, Petitioner was arrested on a warrant relative to the 1994 indictment to which, as noted, Petitioner both pleaded guilty and was sentenced on March 29, 2002.  AR 66-71, 242-43, 266-75.  Although the question was discussed at later proceedings, *see* Facts, *infra*, at 4, it was never conclusively resolved in the record.  Petitioner, however, does not argue that March 29, 2002 is the correct date of his felony grand larceny conviction.  Most likely, the year of the Notice to Appear carries a typographical error and therefore should read "2002."

Petitioner, represented by legal counsel Andrea W. Clarke ("Clarke"), appeared before the IJ on December 5, 2002. AR 73-81. Clarke advised the IJ that Petitioner would seek relief by requesting a withholding of removal under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("the CAT"),[5] and requested a 30-day adjournment to prepare the asylum application. AR 75-79. Following the adjournment, the administrative removal proceedings resumed on January 2, 2003, when the IJ acknowledged receipt of Petitioner's application seeking asylum as a refugee and relief from removal under the CAT, set February 3, 2003 as the administrative trial date, and warned Petitioner of the consequences of knowingly filing a frivolous asylum application. AR 82-86. Clarke then raised a concern as to the accuracy of Petitioner's criminal record based on a discrepancy regarding the actual date of Petitioner's felony grand larceny conviction and advised the IJ that if it was determined that Petitioner's criminal record was incorrect and that Petitioner was not a felon, Petitioner would also ask for cancellation of removal. AR 87-92.

Petitioner's administrative trial before the IJ on the removal charges lasted two days commencing on February 3, 2003, AR 93-200, and concluding on February 24, 2003. AR 201-300. At the trial's commencement on February 3, 2003, Clarke advised the IJ that the discrepancy regarding the correct date of Petitioner's felony grand larcey conviction had been resolved and that Petitioner would not seek cancellation of removal. AR 93-96. The evidence Petitioner presented to establish that, upon removal

---

[5] The CAT, which has been in effect as to the United States since November 20, 1994, "provides in relevant part that '[n]o State Party shall expel, return . . . or extradite a person to another State where there are substantial grounds for believing that he would be in danger of being subjected to torture.'" *Wang v. Ashcroft*, 320 F.3d 130, 133 & n.1 (2d Cir. 2003).

to Haiti, Petitioner was likely to be tortured because of his family's political connections, particularly Petitioner's father's former positions as a Deputy Minister and Judge under the government of former Haiti President Jean-Claude Duvalier, included, *inter alia*, testimony from Petitioner, Petitioner's mother, two sisters, and a cousin regarding the kidnapping and presumed murder in Haiti of Petitioner's half-brother, and the murder in Haiti of two of Petitioner's cousins.

At the trial's conclusion on February 24, 2003, the IJ issued his oral decision finding that Petitioner's status as an aggravated felon rendered him ineligible for asylum, and that Petitioner had failed to establish he had a well-founded fear of being subjected to torture, based on his father's positions in former Haiti President Duvalier's government, to be eligible for discretionary relief under 8 U.S.C. § 1231(b) or withholding of removal under the CAT.  AR 46-57.  The IJ emphasized that although testimony by Petitioner's various relatives established that Petitioner's family was "extremely distraught" over the kidnapping and murders of various family members in Haiti and attributed such murders to Haitians seeking vengeance on Petitioner's family based on involvement in Duvalier's government, none of the testifying family members had witnessed any of the alleged murders or kidnapping in Haiti and no other evidence submitted established the circumstances of any of the asserted deaths.  AR 53-54. The IJ determined that Petitioner's "brother" who was allegedly kidnapped and presumed murdered was, in fact, Petitioner's half-brother and was neither the biological son of Petitioner's father nor carried the family name of "Bastien."  AR 54.  Petitioner's two cousins who supposedly were murdered in Haiti were related to Petitioner through his mother and, thus, also were not known by the family name of "Bastien."  AR 54-55.

The IJ also relied on testimony from Petitioner's cousin, Marie Rose LaCroix, that her husband who served as a judge under former President Duvalier remained in Haiti and that he did not face much danger as he did not live in Haiti's capital city but, rather, in an outlying area. AR 55. The IJ observed that much of the violence in Haiti was random and concluded that despite the fears expressed by Petitioner and the family members who testified on Petitioner's behalf, Petitioner had failed to establish that upon returning to Haiti, he was likely to be the target of violence by government officials based on Petitioner's father's role in Duvalier's government, rather than the victim of a random act of violence committed by other groups or people from whom the government was unable to protect Petitioner as required to establish eligibility for relief from removal under the CAT. AR 56-57. The IJ further acknowledged that even if Petitioner, upon being removed to Haiti, was indefinitely detained in a Haitian prison with substandard prison conditions, such detention would not constitute torture within the meaning of the CAT. AR 57-58. Accordingly, the IJ denied Petitioner's application for asylum both as a refugee and under the CAT and Petitioner's removal to Haiti based on the charges in the Notice to Appear was ordered. AR 58.

On March 13, 2003, Petitioner filed a Notice of Appeal with the Board of Immigration Appeals ("the BIA"). AR 38. The BIA affirmed the IJ's decision, without opinion, on June 26, 2003, AR 1-2, and Petitioner commenced this action on August 12, 2003.

## DISCUSSION

Petitioner does not challenge the Final Order of Removal but, rather, the denial

of his application seeking discretionary relief from removal both under 8 U.S.C. §

1231(b) and the CAT.[6]  Petitioner ¶¶ 11-13.  Petitioner also asserts that based on his

lengthy residence in the United States, where his parents, three siblings and four

children, who are United States citizens and depend on Petitioner's physical, mental

and financial support, also reside, he has a substantial liberty interest in remaining in

the United States and Petitioner's removal would result in exceptional hardship to

himself and his family.  Petition ¶¶ 14-15.  Petitioner further argues for the first time in

footnote 1 of Petitioner's Response that despite his 2002 felony grand larceny

conviction, the criminal act underlying such conviction was committed on September

21, 1994 and, as such, predated enactment of the Illegal Immigration Reform and

Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009,[7]

which therefore may have been unconstitutionally applied to him.  Petitioner's

Response at 1 and n. 1.

Respondent seeks to dismiss the Petition for failing to state a claim for which

relief can be granted, Respondent's Memorandum at 6-7; for lack of jurisdiction insofar

as the Petitioner asserts a claim for deferral of removal, Respondent's Memorandum at

7-11; Respondent's Reply at 1-4; and for lack of subject matter jurisdiction over

---

[6] The IJ also found that Petitioner's criminal history rendered him statutorily ineligible for asylum, AR 51-52, for which Petitioner had also applied.  AR 462-79.  Petitioner has not challenged the denial of his asylum request.

[7] Prior to its repeal in 1996, § 212(c) of the INA, formerly codified at 8 U.S.C. § 1182(c), gave the Attorney General discretion to waive deportation under certain conditions for lawfully admitted permanent residents.  In 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, of which § 440(d) of which limited eligibility for relief under § 212(c).  Later in 1996, Congress enacted the IIRIRA, including § 304(b) which repealed § 212(c) altogether.  IIRIRA replaced § 212(c) discretionary relief from deportation with a form of discretionary relief called "cancellation of removal," allowing the Attorney General to cancel removal proceedings for certain resident aliens, excluding those convicted of an aggravated felon.  INA § 240A, 8 U.S.C. § 1229b(a).

Petitioner's constitutional violation claim, raised for the first time in Petitioner's

Memorandum, because such claim has not been administratively exhausted,

Respondent's Reply at 4-5, and, alternatively, on the claim's merits.  *Id*. at 5-7.


1.      **Jurisdiction**

Respondent raises two jurisdictional challenges to the Petition.  First,

Respondent argues that  Petitioner failed to exhaust administrative remedies insofar as

he challenges the constitutionality of the retroactive application of IIRIRA.

Respondent's Reply at 4-5.  Respondent also argues with regard to Petitioner's

assertion that his claim for deferral of removal under the CAT was wrongly denied that

the Petition fails to allege an error of fact or law by either the IJ or the BIA.

Respondent's Memorandum at 7-11; Respondent's Reply at 1-4.


A.      **Exhaustion of Administrative Remedies**

Petitioner asserts for the first time in a footnote to his Memorandum of Law,

Petitioner's Response at 1, n. 1, that because the criminal conduct underlying his felony

grand larceny conviction occurred on September 21, 1994, *i.e.*, before the enactment of

IIRIRA, the retroactive application of IIRIRA to him "might" be a constitutional violation.

Respondent argues that Petitioner's failure to exhaust administrative remedies as to

such claim, which Petitioner does not deny, the court is without jurisdiction over the

claim.  Respondent's Reply at 4-5.

Generally, "'a party may not seek federal judicial review of an adverse

administrative determination until the party has first sought all possible relief within the

agency itself.'" *Beharry v. Ashcroft*, 329 F.3d 51, 56 (2d Cir. 2003) (quoting *Howell v. INS*, 72 F.3d 288, 291 (2d Cir. 1995)).  Exhaustion of administrative remedies serves numerous purposes, including protecting the authority of administrative agencies, limiting interference in agency affairs, and promoting judicial efficiency by resolving potential issues and developing the factual record." *Beharry, supra*, at 56.  The Second Circuit has held that an administrative exhaustion requirement may be either statutorily or judicially imposed and the distinction between the two is "pivotal" as "statutory exhaustion requirements are mandatory, while the judicial (common-law) exhaustion requirement is discretionary and includes a number of exceptions." *Beharry, supra*, at 56 (citing cases).

The Second Circuit has held that INA § 242, 8 U.S.C. § 1252(d) mandates, "by its plain language," that "a court may review a final order of removal" only if a petitioner "has exhausted all administrative remedies available," and that the exhaustion requirement  "applies to all forms of review, including habeas corpus." *Theodoropoulos v. Immigration and Naturalization Service*, 358 F.3d 162, 171 (2d Cir. 2004) (quoting 8 U.S.C. § 1252(d)).  Exhaustion of administrative remedies prior to seeking habeas relief pursuant to 8 U.S.C. § 2241 is thus statutorily mandated, and the failure to administratively exhaust may be excused only where the petitioner raises a substantial constitutional claim over which the IJ and the BIA lack jurisdiction.  *Id*. at 172.

In the instant case, Petitioner challenges as unconstitutional the retroactive application of IIRIRA to deny him discretionary relief from removal under INA § 212(h), despite his 2002 felony grand larceny conviction, arguing that the conviction was based on criminal conduct in which Petitioner participated on September 21, 1994, prior to the

effective date of IIRIRA.  The Second Circuit has, however, rejected a similar attack on the INA's statutory administrative exhaustion requirement in the context of retroactive application of the IIRIRA to a conviction obtained prior to the statute's enactment.  *See Theodoropoulos*, *supra*, at 172.  Specifically, in *Theodoropoulos*, *supra*, the petitioner challenged as unconstitutional the application of IIRIRA's repeal of the availability of discretionary relief from removal under INA § 212(h) to aggravated felons whose convictions were obtained at jury trials conducted prior to the enactment of IIRIRA. *Theodoropoulos*, *supra*, at 171-72.  The Second Circuit stated that despite presenting the claim as a constitutional challenge, the "antecedent question  to [the petitioner's] constitutional claim - - that IIRIRA is impermissibly retroactive when applied to petitioners like him - - is whether the IJ properly interpreted IIRIRA's repeal as applying to [the petitioner].  An appeal from the IJ's determination would have enabled the BIA to review this interpretation and either affirm or deny it."  *Id.* at 171 (citing *Adelphia Communications Corp. v. FCC*, 88 F.3d 1250, 1256 (D.C.Cir. 1996) ("[A]lthough a constitutional attack upon a statute need not be raised before [an] agency, a constitutional attack upon an agency's interpretation of a statute is subject to the exhaustion requirement."), and comparing *Bell v. Reno*, 218 F.3d 86, 90 (2d Cir. 2000) ("We must affirm the agency's construction of a statute that Congress charges the agency with enforcing as long as that interpretation is reasonable.")).

In the instant case, Petitioner's failure to present his constitutional challenge to the asserted retroactive application of IIRIRA to deny him discretionary relief from removal pursuant to INA § 212(h) has deprived both the IJ of the opportunity to construe IIRIRA, and the BIA of the opportunity to review the IJ's interpretation and

either affirm or deny it.  *Theodoropoulos*, *supra*, at 172.  As such, Petitioner's failure to

exhaust administrative remedies as to his constitutional challenge renders the court

without jurisdiction over the claim and the claim is DISMISSED.[8]


### B.    CAT

Petitioner alleges that the IJ and the BIA erred in denying his request for relief

under the CAT, which provides relief from removal to any alien, regardless of criminal

history, for whom the evidence establishes "the reality of the torture threat."  Petition ¶¶

12-13; Petitioner's Memorandum at 2-3.  Petitioner maintains that the evidence he

presented at his trial sufficiently met his burden of proof of establishing a "clear

---

[8] Even if Petitioner has exhausted administrative remedies relative to his claim that because the criminal conduct underlying his 2002 felony grand larceny conviction occurred on September 21, 1994, prior to the enactment of IIRIRA, the reliance on any IIRIRA provision in denying Petitioner's application for relief from removal was unconstitutionally retroactively applied, Petitioner's Response at 1 n. 1, the claim would be dismissed on the merits.  Specifically, prior to its repeal in 1996, Petitioner would have been eligible for relief from removal under INA § 212(c), formerly codified at 8 U.S.C. § 1182(c), given that Petitioner was an LPR who had lived in the United States since 1982 and was sentenced to 1½ to 3 years incarceration on his 2002 felony grand larceny conviction.  *See Edwards v. Immigration and Naturalization Service*, 393 F.3d 299, 307 (2d Cir. 2004) (observing that prior to its repeal, INA § 212(c)  provided for relief from removal for a criminal alien who demonstrated three criteria, including (1) lawful permanent resident status; (2) lawful domicile in the United States for at least seven years; and (3) if convicted of an aggravated felony or felonies, service of less than five years in prison for such felony offenses).  Section 304(b) of IIRIRA, enacted in 1996, specifically repealed § 212(c) and, thus, in no longer available to Petitioner as his 2002 felony grand larceny conviction renders him an aggravated felon, 8 U.S.C. § 1101(a)(43)(G); *Osses  v. McElroy*, 287 F.Supp.2d 199, 206 (W.D.N.Y. 2003), for whom discretionary relief from removal is not available.  *See* 8 U.S.C. § 1182(h) (describing circumstances in which Attorney General is authorized to grant discretionary relief from removal for certain alien, excluding those convicted of an aggravated felony).  Moreover, IIRIRA has not been unconstitutionally applied to Petitioner because the criminal conduct on which the 2002 felony grand larceny conviction is predicated occurred on September 21, 1994, prior to the enactment of IIRIRA, denying him relief under § 212(c).  Rather, although the Supreme Court has held that IIRIRA's provisions precluding an otherwise removable alien from applying for discretionary relief from deportation cannot be applied to an alien who pleaded guilty to the subject aggravated felony offense prior to the enactment of IIRIRA, *Immigration and Naturalization Service v. St. Cyr*, 533 U.S. 289, 314-15 (2001), the Second Circuit, construing *St. Cyr*, has specifically held that "'it is the conviction, not the underlying criminal act, that triggers the disqualification from § 212(c) relief.'"  *Khan v. Ashcroft*, 352 F.3d 521, 523 (2d Cir. 2003) (quoting *Domond v. INS*, 244 F.3d 81, 85-86 (2d Cir. 2001)).  Accordingly, even if the court had jurisdiction over this claim, it is without merit.

probability" that he faced persecution or danger of death if he were removed to Haiti.

Petitioner's Memorandum at 2.  According to Petitioner, the IJ erred in denying his

application for relief under the CAT on the basis that none of the witnesses testifying on

Petitioner's behalf witnessed the kidnapping or murders of Petitioner's family members.

Petitioner's Memorandum at 7-8.

Respondent seeks dismissal of this claim on the basis that it fails to state either

an error of fact or law supporting Petitioner's allegation that the IJ's decision, affirmed

by the BIA, was wrong.  Respondent's Memorandum at 7.  Respondent further argues

that Petitioner's failure to specify any factual or legal error renders the court without

jurisdiction over the claim.  *Id.* at 8-9.

A district court is authorized "to grant a writ of habeas corpus whenever a

petitioner is 'in custody in violation of the Constitution or laws or treaties of the United

States.'"  *Wang*, *supra*, at 140 (quoting 28 U.S.C. § 2241(c)(3)).  Here, Petitioner seeks

habeas relief based on Article 3 of the CAT which, as relevant, provides that "[n]o State

Party shall expel, return . . . or extradite a person to another State where there are

substantial grounds for believing that he would be in danger of being subjected to

torture."   Only self-executing treaties prescribing rules by which private rights may be

determined create individual rights giving rise to habeas relief, however, and the

Second Circuit has recognized that the CAT is not self-executing.  *Wang*, *supra*, at 140

(citing *Columbia Marine Services, Inc. v. Reffet, Ltd.*, 861 F.2d 18, 21 (2d Cir. 1988)).

Nevertheless, Congress, in order to implement Article 3 of the CAT, passed the Foreign

Affairs Reform and Restructuring Act of 1988 ("FARRA"), Pub.L. No. 105-277, div. G,

Title XXII, § 2242, 112 Stat. 2681-822 (Oct. 21, 1998) (codified as Note to 8 U.S.C. §

1231), which provides that

> [i]t shall be the policy of the United States not to expel, extradite, or otherwise effect the involuntary return of any person to a country in which there are substantial grounds for believing the person would be in danger of being subjected to torture, regardless of whether the person is physically present in the United States.

*Wang*, *supra*, at 133 (quoting FARRA § 2242(a)).

FARRA also directs the heads of the appropriate agencies to prescribe regulations to implement the obligations of the United States under CAT Article 3. *Wang*, *supra*, (citing FARRA § 2242(b)). Accordingly, the Justice Department promulgated a series of regulations implementing FARRA, requiring the INS "to grant protection under the CAT whenever it determines that an 'alien is more likely than not to be tortured in the country of removal,' 8 C.F.R. § 208.16(c)(4), but the burden of proof is on the applicant to prove that he or she is more likely than not to be tortured if removed, 8 C.F.R. § 208.16(c)(2)." *Wang*, *supra*. Furthermore, FARRA expressly provides federal courts with jurisdiction to consider or review claims under the CAT, as implemented by FARRA § 2242, in connection with the review of a final order of removal pursuant to INA § 242, 8 U.S.C § 1252. *Wang*, *supra*, at 140 (citing FARRA § 2242(d)). The Second Circuit has construed this restrictive language as granting federal courts jurisdiction under 8 U.S.C. § 2241 to consider claims arising under the CAT, as implemented by FARRA and the regulations promulgated thereunder, despite the fact that the petitioner is an aggravated felon for whom habeas review is prohibited. *Wang*, *supra*, at 141-42 (citing 8 U.S.C. § 1252(a)(2)(C). The scope of habeas review available for CAT claims is, however, limited to claims of erroneous application of statutes, including challenges to the BIA's application of the particular facts of the case to the relevant law. *Wang*,

*supra*, at 142-43.

In the instant case, Respondent maintains that the court is without jurisdiction over Petitioner's claim brought under the CAT because Petitioner has failed to specify any legal or factual basis for such claim.  Respondent's Memorandum at 7-9.  A thorough reading of the Petition, however, establishes that Petitioner's challenges under the CAT the IJ's determination, affirmed by the BIA, that the evidence presented at the trial was insufficient to establish his burden for relief from removal under the CAT because none of the witnesses testifying on Petitioner's behalf at the trial witnessed the kidnapping or murders of Petitioner's family members in Haiti.  Petitioner's Memorandum at 2-8.  As such, Petitioner contests not only the immigration court's factual determinations, but also the application of the facts to FARRA and the regulations promulgated thereunder, and Petitioner's claim is within this court's jurisdiction.

## 2.   **Extreme Hardship**

Petitioner alleges that he has a substantial liberty interest in remaining in the United States and that he is eligible for relief from removal because his removal would result in "extreme hardship" to Petitioner and his family in the United States, including his three children, his parents and his siblings, all of whom are United States citizens and who depend on Petitioner for physical, mental and financial support.  Petition ¶¶ 14-15.  This claim should be dismissed for the following reasons.

Petitioner's "extreme hardship" claim implies he is seeking discretionary relief pursuant to former INA § 212(h), codified at 8 U.S.C. § 1182(h), which grants the

Attorney General discretion to waive inadmissibility

> in the case of an immigrant who is the spouse, parent, son, or daughter of a citizen [or LPR] of the United States . . . if it is established to the satisfaction of the Attorney General that the alien's denial of admission would result in extreme hardship to the United States Citizen or lawfully resident spouse, parent, son, or daughter of such alien. . . .

8 U.S.C. § 1182(4)(1)(B).

The Second Circuit has explained that "by its terms, § 212(h) provides for a waiver of inadmissibility only; but by a quirk elsewhere in the INA, § 212(h) in effect allows for a waiver of deportability as well." *Jankowski-Burczyk v. I.N.S.*, 291 F.3d 172, 175 & n. 2 (2d Cir. 2002). INA § 212(h), however, also provides in relevant part that

> [n]o waiver shall be granted under this subsection in the case of an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence if . . . since the date of such admission the alien has been convicted of an aggravated felony . . . .

8 U.S.C. § 1182(h).

Significantly, in the instant case, Petitioner's 2002 felony grand larceny conviction, for which he was sentenced to one and a half to three years incarceration, qualifies as an aggravated felony conviction. 8 U.S.C. § 1101(a)(43)(G) ("The term 'aggravated felon' means – a theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment [is] at least one year . . . .") (bracketed text in original); *Osses, supra*, at 206 (holding criminal alien ineligible for discretionary relief from removal under INA § 212(h) because conviction under New York law of fourth degree grand larceny qualified as aggravated felony conviction under INA). The Petition is, therefore, DISMISSED on this ground.

3.      **Withholding of Removal Under 8 U.S.C. § 1231(b) and Relief Under the CAT**

Petitioner contends that he meets the criteria for discretionary withholding of

removal under INA § 241(b), 8 U.S.C. § 1231(b), because he was not convicted of a

"particularly serious crime," as well as under the CAT, 8 C.F.R. § 208.16.   Petition ¶ 11;

Petitioner's Response at 3.   Petitioner maintains that the IJ abused his discretion in

determining that Petitioner had failed to meet his burden of proof to establish eligibility

for withholding of removal under 8 U.S.C. § 1231(b) and relief from removal under the

CAT because the evidence presented established clear probability that Petitioner would

be persecuted and tortured upon returning to Haiti because of Petitioner's father's

political connections under former Haitian President Duvalier was an abuse of

discretion.   Petition ¶¶ 11-13; Petitioner's Response at 6-11.   Petitioner also challenges

the IJ's determination that testimony presented by witnesses on Petitioner's behalf

regarding the murder and kidnapping of several of Petitioner's relatives in Haiti was not

credible because such witnesses were not eyewitnesses to the murders and

kidnapping.   Petitioner's Response at 7-8.   Finally, Petitioner maintains that the

evidence establishes that upon being removed to Haiti, he would likely be indefinitely

imprisoned in a Haitian prison where conditions are substandard.   Petitioner's

Response at 9-11.

The discretionary relief of withholding of removal pursuant to 8 U.S.C. § 1231(b)

is available to any alien, including a criminal alien who has not been convicted of a

particularly serious crime, provided the alien establishes that it is more likely than not

that, upon returning to the country designated for removal, he would be subject to

persecution based on one of five grounds, including the alien's (1) race, (2) religion, (3)

nationality, (4) membership in a particular social group or (5) political opinion.  8 U.S.C.

§ 1231(b)(3)(A); *INS v. Stevic*, 467 U.S.407, 424-25 (1984).  Further, not all aggravated

felonies qualify as a "particularly serious crime" which includes only those aggravated

felonies "for which the alien has been sentenced to an aggregate term of imprisonment

of at least 5 years."  8 U.S.C. § 1231(b)(3)(B).  In the instant case, although Petitioner's

felony grand larceny conviction qualifies under the INA as an aggravated felony,

because Petitioner was sentenced to a term of imprisonment of only 1½ to 3 years on

the conviction, it does not qualify as a "particularly serious crime."  Thus, Petitioner was

eligible for discretionary withholding of removal provided he established that it was

"more likely than not" that he would face persecution upon returning to Haiti on any one

of the five specifically enumerated grounds.

The Second Circuit has yet to decide the precise standard for reviewing the

immigration court's application of law to facts pursuant to a § 2241 petition, although

such standard is more limited than on direct review.[9]  *Wang*, *supra*, at 143-44.  In the

instant case, regardless of the appropriate standard of review, the IJ did not err in

denying Petitioner's application for discretionary relief from removal under either 8

U.S.C. § 1231(b), or the CAT, nor did the BIA err in affirming the decision without

opinion.

Pursuant to 8 U.S.C. § 1231(b)

the Attorney General may not remove an alien to a country if the Attorney
General decides that the alien's life or freedom would be threatened in that
country because of the alien's race, religion, nationality, membership in a
particular social group, or political opinion.

---

[9] In the instant case, the IJ's decision was affirmed by the BIA without opinion.  AR 2.

8 U.S.C. § 1231(b)(3)(A).

Initially, the court observes that the burden of proof necessary to establish relief from

removal under 8 U.S.C § 1231(b), is the same as the burden of proof applicable to a

removal challenge under the CAT, *i.e.*, establishing "that it is more likely than not that

he or she would be tortured if removed to the proposed country of removal."  8 C.F.R. §

208.16(c)(2).  The record in the instant case establishes that the IJ correctly applied this

burden of proof in determining that Petitioner did not meet the criteria for relief from

removal under either 8 U.S.C. § 1231(b) or the CAT.

Specifically, the IJ determined with regard to Petitioner's request for relief

pursuant to 8 U.S.C. § 1231(b) that Petitioner's request for such relief was based on his

sincere belief that upon returning to Haiti, where Petitioner's father was previously

deputy minister and judge under the former Duvalier government, Petitioner would be

physically threatened.  AR 52-53.  The IJ considered the evidence presented on

Petitioner's behalf, including testimony by Petitioner's mother, sister and two cousins,

about the alleged kidnapping and presumed murder of his half-brother and the murder

of two cousins, all which occurred in Haiti.  AR 53.  Petitioner's testifying family

members attributed the kidnapping and killings to a group of people seeking vengeance

on Petitioner's family because of his father's involvement in the former government.  AR

53.  The IJ, however, observed that none of the testifying witnesses had witnessed any

of the alleged murders or kidnapping and no other evidence in the record connected

any of the murders or the kidnapping to any political group.  AR 53-54.  The fact that

neither Petitioner's kidnapped half-brother, nor either of his murdered cousins carried

the family name of "Bastien," cast further doubt that the alleged kidnapping and killings

were directed against the Bastien family.  AR 54-55.  The IJ further observed that one

of Petitioner's cousins gave testimony that her husband had been a judge in the former

Duvalier government, yet remained in Haiti where he did not face much danger based

on his previous government involvement because he lived in an outlying area, rather

than in the capital city.  AR 55.  Petitioner, who initially left Haiti for the United States in

1980, returning for two weeks in 1988 to obtain an immigrant visa and then returned to

the United States, testified that he encountered no problems when he went to Haiti in

1995 to assist his mother in searching for his kidnapped brother, although he was very

careful.  AR 55.  The IJ further observed that although Petitioner's mother became an

LPR of the United States in 1977, and his father emigrated to the United States in

1987, AR 55, Petitioner feared that his father's political opinion when involved with the

Duvalier government would be imputed to Petitioner.  AR 55-56.  The IJ, however,

determined that none of the evidence Petitioner presented in support of such claim met

his burden of proof that he would be persecuted based on his father's political

connections upon returning to Haiti.  AR 55-58.

In particular, the IJ stated he "clearly believes that the witnesses' fears of having

[Petitioner] return to Haiti are sincere," although such witnesses failed to establish that

Petitioner would, "more likely than not," be persecuted based on his father's role in the

Duvalier regime.  AR 56.  Although other evidence Petitioner submitted established that

Haiti was, at times, violent, the IJ determined that much of the violence was random

and, in fact, Petitioner had failed to show that he would face harm from anyone within

the present Haiti government upon returning to Haiti.  AR 56.  Furthermore, the IJ

observed that Petitioner's witnesses attributed the murder of their relatives not to

members of the current Haiti government but, rather to "a group of zinglindou,[10] who are

apparently killing people who they consider to be former members of the Tonton

Macoutes."[11]  AR 57.  Accordingly, the IJ properly applied the law to the relevant fact in

concluding that Petitioner had failed to satisfy his burden of proof under 8 U.S.C. §

1231(b) that he would, upon returning to Haiti, be targeted for persecution based upon

his father's position, more than 15 years earlier, in the former Duvalier government.  AR

57.

As to Petitioner's claim for relief under the CAT, the IJ held that Petitioner also

failed to meet his burden of proof under 8 C.F.R. § 208.16(c)(2) because there record

contained "no indication that the government of Haiti cannot protect the respondent or

others so situated from this violence if in fact it is geared at them."  AR 57.  The IJ also

considered Petitioner's assertion that upon being removed to Haiti he may be

indefinitely detained in a prison, the conditions of which are so poor as to constitute

"torture" as defined under the CAT.  Petitioner's Response at 9-11.  Rather, the IJ

observed that in a recent decision, the BIA had held that neither the indefinite detention

of criminal deportees by Haitian authorities nor substandard prison conditions in Haiti

constitute torture within the meaning of 8 C.F.R. § 208.18(a) absent evidence that the

authorities intentionally and deliberately detained deportees or created an maintained

---

[10] The term "zinglindou," also spelled "zenglendos" is a Haitian word "primarily applied to common criminals."  *See* Profile of Asylum Claims and Country Conditions for Haiti at 23, AR 451.

[11]The term "Tonton Macoutes" historically referred to a paramilitary group particularly dreaded under the Duvalier governments (1957-1986), although the term has since "lost much of its former applicability and precision."  *See* Profile of Asylum Claims and Country Conditions for Haiti at 23, AR 451. Today, "the term has been generalized by constantly being invoked as an expletive for common criminals, or for people (sometimes of higher social station or conservative views) with whom one disagrees."  *Id.*

such prison conditions to inflict torture.  AR 57-58 (citing *In re J- E-*, 23 I. & N. Dec. 291 (BIA 2002).  Accordingly, the IJ also properly applied the law to the relevant facts in concluding that Petitioner had failed to satisfy his burden of proof for relief under the CAT based upon a possibility that, upon returning to Haiti, he would be indefinitely detained in a Haitian prison with substandard prison conditions.

Accordingly, the record establishes that the IJ applied the correct burden of proof as to both of Plaintiff's requests for relief from removal under 8 U.S.C. § 1231(b) and the CAT.  The Petition is, therefore, also DISMISSED on these grounds.

## CONCLUSION

Based on the foregoing, the Petition is DISMISSED and the Clerk of the Court shall close the file.  Further, as the court finds there is no substantial question presented for appellate review, a certificate of appealability will not issue.  28 U.S.C. § 2253(c)(2) (1996).

**Any petition for permission to appeal with the Circuit Clerk, United States Court of Appeals for the Second Circuit, New York, New York, must be filed within sixty (60) days of the date of judgment in this action.  *See* Fed.R.App. 5(a)(1) & (2). Requests to proceed on appeal as a poor person must be filed with the United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.**

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


DATED:       April 29 , 2005
             Buffalo, New York